UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW PROKOS,

                   Plaintiff,

       - against -

HAUTE LIVING, INC. and DOES 1-10.,

                  Defendants.

**ORDER**

19 Civ. 138 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Andrew Prokos has brought a claim for copyright infringement against Defendant Haute Living Inc. Defendant Haute Living has moved to dismiss for lack of personal jurisdiction, or in the alternative, to transfer the case to the Southern District of Florida. For the reasons stated below, Haute Living's motions will be denied.

## BACKGROUND

### I. FACTS

        Plaintiff is a professional photographer with his principal place of business in New York. (Am. Cmplt. (Dkt. No. 11) ¶ 5) Plaintiff alleges that he created and registered with the United States Copyright Office photographs of a Harlem brownstone building and the Solomon Guggenheim Museum in Manhattan (the "Photographs"). (Am. Cmplt. (Dkt. No. 11) ¶¶ 10-11) Haute Living, a Florida corporation, allegedly reproduced the Photographs on its website without Plaintiff's permission. (Id. ¶¶ 6, 14-18)

### II. PROCEDURAL HISTORY

        The Complaint was filed on January 8, 2019. (Dkt. No. 1) The Amended Complaint was filed on April 5, 2019. (Am. Cmplt. (Dkt. No. 11))

The Amended Complaint brings claims for copyright infringement under the Copyright Act and for violation of the Digital Millennium Copyright Act. (Id. ¶¶ 19-31)

On August 5, 2019, Haute Living filed a pre-motion letter seeking leave to file a motion to dismiss for lack of personal jurisdiction or to transfer venue. (Dkt. No. 32) On August 13, 2019, this Court directed the parties to conduct jurisdictional discovery and propose a briefing schedule for the instant motion. (Dkt. No. 35)

On October 30, 2019, Haute Living filed its motion to dismiss for lack of personal jurisdiction, or alternatively, to transfer this action to the Southern District of Florida. (Dkt. No. 51)

## DISCUSSION

I.  **LEGAL STANDARDS**

   A.  **Rule 12(b)(2) Standard**

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). The nature of the plaintiff's burden "varies depending on the procedural posture of the litigation." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). Prior to discovery, a plaintiff may carry this burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction[;]" "[a]t th[is] preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." Id. "In contrast, when an evidentiary hearing is held, the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

"Where as here, . . . 'the parties have conducted . . . discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held – the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant.'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez ("Bank Brussels I"), 171 F.3d 779, 784 (2d Cir. 1999) (alteration in original) (quoting Metro. Life Ins. Co., 84 F.3d at 567). Plaintiff may make this showing through "affidavits and supporting materials." S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (internal quotations marks and citation omitted). Accordingly, at this stage, the Court may consider materials outside of the pleadings, but the materials must be construed "in the light most favorable to plaintiffs, resolving all doubts in their favor.'" Id. (quoting Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008)); see also Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp., No. 05 Civ. 4960 (LAP), 2010 WL 2835567, at *2 (S.D.N.Y. July 13, 2010).

The determination of whether a federal court has personal jurisdiction over a defendant involves a "two-part inquiry." Metro. Life Ins. Co., 84 F.3d at 567. The court "must [first] determine whether the plaintiff has shown that the defendant is subject to personal jurisdiction under the forum state's laws[.]" Id. The court "must [then] assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Id. "'Where, as here, the plaintiff[] premise[s] [its] theory of personal jurisdiction upon the New York long-arm statute, [courts] first consider whether the requirements of the statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due Process Clause.'" V Cars, LLC v. Israel Corp., 902 F. Supp. 2d

349, 360 (S.D.N.Y. 2012) (alterations in original) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012)).

"[C]ontacts with [a] forum may confer two types of jurisdiction – specific and general." In re Parmalat Sec. Litig., 376 F. Supp. 2d 449, 453 (S.D.N.Y. 2005) (footnote omitted).  General jurisdiction "'is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.'" Id. (quoting Metro. Life Ins. Co., 84 F.3d at 568). "Specific jurisdiction exists when a forum 'exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum[.]'"  Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 & nn. 8–9 (1984)).

Here, Plaintiff concedes that there is no basis for the exercise of general jurisdiction.  (See Pltf. Opp. Br. (Dkt. No. 54) at 3)  Accordingly, this Order addresses whether there is a factual basis for the exercise of specific jurisdiction.

"In order to establish [specific] jurisdiction under [N.Y. C.P.L.R. § 302(a)(3)(ii)], a plaintiff is [] required to demonstrate that (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce." Penguin Group (USA) Inc. v. American Buddha ("Buddha I"), 609 F.3d 30, 35 (2d Cir. 2010).

"[C]ourts determining whether there is injury [to person or property] in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" Bank Brussels I, 171 F.3d at

791.  "[A] New York copyright owner alleging infringement sustains an in-state injury pursuant to CPLR 302(a)(3)(ii) when its printed literary work is uploaded without permission onto the Internet for public access."  Penguin Grp. (USA) Inc. v. Am. Buddha ("Buddha II"), 16 N.Y.3d 295, 304 (2011).  Moreover, "the out-of-state location of the infringing conduct carries less weight in the jurisdictional inquiry in circumstances alleging digital piracy[.]"  Id. at 305.

As to Due Process requirements, courts

> undertake an analysis consisting of two components:  the "minimum contacts" test and the "reasonableness" inquiry.  The first of these tests asks whether the defendant has certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  Where the claim arises out of, or relates to, the defendant's contacts with the forum – i.e., specific jurisdiction – minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there. . . . [T]he second part of the jurisdictional analysis asks whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice – that is, whether it is reasonable under the circumstances of the particular case.  Courts are to consider five factors in evaluating reasonableness:  (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez ("Bank Brussels II"), 305 F.3d 120, 127, 129 (2d Cir. 2002) (internal quotation marks and citations omitted).

### B.     Standard for Transfer Motions

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "The purpose of § 1404(a) is 'to prevent waste of

5

time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" In re Stillwater Mining Co. Sec. Litig., No. 02 Civ. 2806 (DC), 2003 WL 21087953, at *2 (S.D.N.Y. May 12, 2003) (quoting Trehern v. OMI Corp., No. 98 Civ. 0242 (RWS), 1999 WL 47303, at *1 (S.D.N.Y. Feb. 1, 1999) (internal quotations omitted)).

Absent consent, "[a] motion to transfer involves two inquiries: (1) whether the action could have been brought in the proposed transferee district, in this case the [Southern District of Florida], and (2) whether transfer is warranted for the convenience of the parties and witnesses, in the interest of justice." CYI, Inc. v. Ja-Ru, Inc., 913 F. Supp. 2d 16, 18 (S.D.N.Y. 2012). "[C]ivil actions 'arising under' federal copyright law are governed by a special venue provision, 28 U.S.C. § 1400(a). . . . That statute provides that copyright cases are properly venued 'in the district in which the defendant or his agent resides or may be found.'" Boehm v. Zimprich, No. 13 CIV. 1031 PAC, 2013 WL 6569788, at *2 (S.D.N.Y. Dec. 13, 2013) (quoting 28 U.S.C. § 1400(a)). "Courts have held that a defendant may be found in any district in which he is subject to personal jurisdiction." Id. (internal citations and quotation marks omitted).

In determining whether to grant a motion to transfer venue, courts consider

> "(1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice."

Megna v. Biocomp Labs. Inc., 220 F. Supp. 3d 496, 498 (S.D.N.Y. 2016) (quoting Frame v. Whole Foods Mkt., Inc., No. 06 Civ. 7058, 2007 WL 2815613, at *4 (S.D.N.Y. Sept. 24, 2007)); see also N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010). "'No one factor is dispositive and the relative weight of each factor depends on the particular

circumstances of the case.'" Megna, 220 F. Supp. 3d at 498 (quoting Smart Skins LLC v. Microsoft Corp., No. 14 Civ. 10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015)).

The movant bears the burden of demonstrating – by clear and convincing evidence – that the balance of convenience and the interests of justice warrant transfer. See N.Y. Marine, 599 F.3d at 114 (approving district courts' application of the "clear and convincing" standard, because "the party requesting transfer carries the 'burden of making out a strong case for transfer'" (citing Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 521 (2d Cir. 1989))).  "Before disturbing the plaintiff's choice of forum, there must be a clear showing that transfer is in the best interests of the litigation." Telebrands Corp. v. Wilton Indus., Inc., 983 F. Supp. 471, 477 (S.D.N.Y. 1997).  "A district court has broad discretion when deciding a motion to transfer venue." Bukhari v. Deloitte & Touche LLP, No. 12 Civ. 4290 (PAE), 2012 WL 5904815, at *2 (S.D.N.Y. Nov. 26, 2012) (citing N.Y. Marine, 599 F.3d at 112).

## II.     DEFENDANT'S RULE 12(b)(2) MOTION

### A.     Alleged Jurisdictional Contacts

Plaintiff has his principal place of business in New York, as demonstrated by the contact page on his website, which lists only a New York address for his business. (Steger Decl. (Dkt. No. 55) ¶ 12 & Ex. J)

Defendant Haute Living is a Florida corporation that operates a network of online and print publications. (Semilof Decl. (Dkt. No. 52) ¶ 5)  Haute Living has fifteen employees in Miami, and one employee who works part-time in New York.  That employee works out of another company's New York office, for which Haute Living pays $2,000 in monthly rent.  (Id. ¶ 6)  Haute Living holds itself out as having a New York office, located at the same address at

which the one New York-based employee works.  (Steger Decl. (Dkt. No. 55) ¶¶ 4-5 & Exs. B & C)  Haute Living's revenue comes from customers located in a variety of states, including Florida and California, as well as from customers located overseas, including in Switzerland.  (Semilof Decl. (Dkt. No. 52) ¶ 11)  Haute Living, Inc. is a member of non-party Haute Residence, LLC, a Florida corporation, which operates an online platform for real estate professionals worldwide.  (Id. ¶¶ 2, 7-9)  Of the 108 real estate professionals listed on the Haute Residence platform, seven are from New York.  (Id. ¶ 9)

The Photographs feature two buildings located in Manhattan, and Plaintiff's declaration demonstrates that at least one of the Photographs was included in an article about New York real estate that appeared on a website affiliated with Haute Living.  (Steger Decl. (Dkt. No. 55) ¶¶ 6, 8 & Exs. D, F)  Moreover, Haute Living is a party to an advertising agreement with New York-based Naftali Group – a real estate developer – and the online article that featured Plaintiff's photograph of a Harlem brownstone describes a Manhattan property developed by Miki Naftali, the founder, chairman, and CEO of Naftali Group.  (Id. ¶¶ 6-7 & Exs. D & E)

B.   **ANALYSIS**

Haute Living contends that Plaintiff has not shown that any of the necessary elements for the exercise of personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3) are satisfied here.  (Def. Reply Br. (Dkt. No. 53) at 7-8 (citing Royalty Network Inc. v. Dishant.com, LLC, 638 F. Supp 2d 410, 423 (S.D.N.Y. 2009)))[1]

---

[1] While Haute Living cites to the four-pronged test set forth in Royalty Network (see Def. Reply Br. (Dkt. No. 53) at 7-8), the elements are substantially the same as those listed in Buddha I.

### 1. Whether Defendant Engaged in Tortious Conduct Out-of-State

Haute Living argues that the first two prongs of the Buddha I test "are not met because Haute Living did not upload the images and thus did not engage in any tortious conduct out of state that caused injury in New York." (Def. Reply Br. (Dkt. No. 53) at 7)

Plaintiff alleges that Haute Living committed the tortious act of publishing the Photographs without his permission, and his causes of action clearly arise from this alleged act. While Haute Living denies that it uploaded Plaintiff's photographs, Defendant's allegations are not sufficient to rebut the Complaint's infringement allegations.

Haute Living has submitted a declaration from Seth Semilof, its chief operating officer, stating that "Haute Residence operates an online platform for real estate professionals . . . allow[ing] them to . . . independently post content about their real estate business. . . . Haute Residence had no involvement in the selection or uploading of any content." (Semilof Decl. (Dkt. No. 52) ¶¶ 8, 10) But these assertions do not address the acts performed by Haute Living, which is the named defendant and which is admittedly a "separate corporate entity" from Haute Residence. (Id. ¶ 7) Nor has Haute Living addressed where the alleged acts of infringment were performed. Given Haute Living's repeated assertion that it operates from Florida, and resolving all doubts in favor of Plaintiff for purposes of analyzing personal jurisdiction, see S. New England Tel., 624 F.3d at 138, this Court concludes that Plaintiff has shown that Haute Living committed the tortious acts underlying Plaintiff's claims outside the state of New York.

### 2. Whether Plaintiff Suffered an Injury in New York

As to the location of Plaintiff's injury, Defendant contends that Plaintiff "has not demonstrated that he's lost any sales in New York or that he has suffered any harm in New York." Defendant notes that Plaintiff "is not registered to do business in New York but is

registered in New Jersey, and [] lists his residence as Jersey City, [New Jersey]." (Def. Reply Br. (Dkt. No. 53) at 7 & n.2)

As to Defendant's assertion that Plaintiff is a resident of and does business in New Jersey, Plaintiff has pled that his principal place of business is in New York. (Am. Cmplt. (Dkt. No. 11) ¶ 4) Plaintiff has also submitted – as an exhibit to his declaration – a copy of the contact page from his website, which lists only a New York address for his business. (Steger Decl. (Dkt. No. 55) ¶ 12 & Ex. J) Given that the corporate registrations cited by Defendant are from 2006 and 2010 (see Def. Reply Br. (Dkt. No. 53) at 7 & n.2), they are not sufficient – under the standard this Court must apply – to rebut Plaintiff's evidence that his current principal place of business is in New York. As set forth above, in resolving the jurisdictional issue, this Court must construe Plaintiff's declaration and supporting materials "in the light most favorable to [P]laintiff, resolving all doubts in [his] favor." S. New England Tel., 624 F.3d at 138 (internal quotations marks and citation omitted). Because Plaintiff has made an adequate showing that his principal place of business is in New York, the situs of the copyright infringement injury is also in New York.

As to Defendant's lost sales argument, Plaintiff need not show that he lost sales in New York because – under New York law – the situs of a New York copyright holder's copyright injury is New York. See Buddha II, 16 N.Y.3d at 301, 304 (holding that "the situs of injury" for an infringement action is the copyright holder's principal place of business).

The Court concludes that this element is satisfied.

### 3. Whether Defendant Should Have Reasonably Expected Consequences in New York

As to the fourth prong of the Buddha I test, Defendant argues that "it was not foreseeable to Haute Living that its online publication, which can be accessed world-wide, would

10

be subject to jurisdiction in New York for photographs that were uploaded by third parties without its knowledge or consent."  (Def. Reply Br. (Dkt. No. 53) at 7-8)

Plaintiff argues that Haute Living "would reasonably expect its actions in posting the infringing images to have consequences in New York," because Haute Living (1) "was working with New York real estate brokers to advertise New York real estate," and (2) "should reasonably expect that the copyright in photographs of New York buildings would be owned by a New York photographer."  (Pltf. Opp. Br. (Dkt. No. 54) at 6-7)

Defendant's arguments about foreseeability have no merit in the context of a business that hosts real estate content related to New York.  The Photographs featured buildings located in New York, and Plaintiff's declaration is sufficient to demonstrate that at least one of the Photographs was used in an article about New York real estate.[2]  (Steger Decl. (Dkt. No. 55) ¶¶ 6, 8 & Exs. D, F)  It is readily foreseeable to an online publication that hosts content about New York real estate that its content may have consequences in New York.  Moreover, Haute Living entered into an advertising agreement with New York-based Naftali Group, and the online article featuring the Harlem brownstone Photograph describes a Manhattan property developed by Miki Naftali, the founder, chairman, and CEO of Naftali Group.  (Id. ¶¶ 6-7 & Exs. D & E)  This advertising agreement provides a nexus between Haute Living's infringing conduct and New York.  Moreover, seven New York real estate brokers have contracts with Haute Living's affiliate Haute Residence, which reinforces Haute Living's contacts with the New York real estate market.  (Semilof Decl. (Dkt. No. 52) ¶ 8)

---

[2]  Exhibit D to the Steger Declaration demonstrates that Plaintiff's photograph of the Harlem brownstone was used as part of an advertisement for a Manhattan apartment building.  (Steger Decl. (Dkt. No. 55) ¶ 6 & Ex. D)

Accordingly, it was reasonably foreseeable to Defendant that its publication of the Photographs would have consequences in New York.

### 4. Whether Defendant Derives Substantial Revenue from Interstate Commerce

As to the fifth prong of Buddha I, Haute Living argues that it "does not regularly solicit or do business in New York. . . ." (Def. Reply Br. (Dkt. No. 53) at 8)  This argument reflects a misunderstanding as to the nature of this element, which is focused on the issue of whether a defendant engages in substantial <u>interstate</u> commerce, not whether the defendant engages in substantial commerce with individuals or entities in the forum state.  For purposes of this element, the issue is whether Haute Living "derives substantial revenue from interstate or international commerce," N.Y. C.P.L.R. § 302(a)(3)(ii), not whether a portion of Haute Living's revenue comes from individuals or entities in New York.

The declaration submitted by Haute Living asserts that 30% of its business comes from a company based in Miami and Switzerland; another 30% of its revenue comes from its real estate network, "with 60% of the [real estate] network brokers from Florida and California"; and the remaining 40% of its revenue "comes from various business throughout the [United States] and Switzerland." (Semilof Decl. (Dkt. No. 52) ¶ 11)  Given that much of Haute Living's revenue comes from states other than Florida – and from Switzerland – it is obvious that it "derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. § 302(a)(3)(ii).

\*     \*     \*     \*

The Court concludes that all prongs of the Buddha I personal jurisdiction test under N.Y. C.P.L.R. § 302(a)(3)(ii) are satisfied.  Accordingly, this Court will now consider whether exercising personal jurisdiction over Defendant comports with Due Process.

### 5. Whether the Exercise of Personal Jurisdiction over Defendant is Consistent with Due Process

Haute Living argues that it "has not purposefully availed itself of doing business in New York," and that "its contacts with this state are tenuous and completely unrelated to the causes of action at issue." (Def. Reply Br. (Dkt. No. 53) at 9)

Plaintiff counters that Haute Living "has purposefully availed itself of the privileges of doing business in New York, renting an office there, holding itself out to the public as having New York offices, doing business with New York real estate brokers, and advertising New York real estate. . . . [Plaintiff's] claims in this case arise directly from [Haute Living's] New York contacts, as [Haute Living] posted [Plaintiff's] photographs to advertise New York real estate for New York brokers who contracted with [Haute Living]." (Pltf. Opp. Br. (Dkt. No. 54) at 8)

Haute Living holds itself out on its website as having a New York office, located at the same address from where its New York-based employee works. (Steger Decl. (Dkt. No. 55) ¶¶ 4-5 & Exs. B & C)  As explained above, Haute Living also entered into an advertising agreement with a New York-based developer, Naftali Group, and the online article featuring Plaintiff's Harlem brownstone Photograph describes a Manhattan property developed by Naftali Group's founder, chairman, and CEO. (Id. ¶¶ 6-7 & Exs. D & E)  Defendant's advertising agreement with Naftali Group bears a clear nexus to the infringing conduct alleged here, given that Naftali Group's Harlem brownstone property is featured in the article that utilizes Plaintiff's Harlem brownstone Photograph. These contacts are sufficient to demonstrate that Defendant purposefully availed itself of the privileges of doing business in New York. See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) ("the record establishes

that [defendant] 'purposely availed itself' of the United States forum by negotiating and forming a contract with an American corporation located in New York").

Defendant cites RegenLab USA LLC v. Estar Tech. Ltd., 335 F.Supp.3d 526 (S.D.N.Y. 2018) to argue that its contacts are "tenuous and completely unrelated to the causes of action at issue." (Def. Reply Br. (Dkt. No. 53) at 9) But in RegenLab, plaintiff's argument for personal jurisdiction was premised on a "stream of commerce" theory. The court found the jurisdictional contacts insufficient, because defendant's sales in New York were the result of a third party's actions, and defendant itself had made only isolated offers to sell in New York. RegenLab, 335 F.Supp.3d at 544-45. Here, by contrast, Haute Living directly contracted with a New York real estate company, and that contract led to the alleged infringement.

As to reasonableness, Defendant has offered no arguments – much less "present[ed] a compelling case" – "that the presence of some other considerations would render jurisdiction unreasonable." Bank Brussels II, 305 F.3d at 129.

This Court concludes that Due Process requirements are satisfied, and accordingly Haute Living's motion to dismiss for lack of personal jurisdiction will be denied.

### III. MOTION TO TRANSFER

Haute Living argues, in the alternative, that this Court should transfer this case to the Southern District of Florida. According to Defendant, "all [relevant] factors weigh[] in favor of venue in the Southern District of Florida." (Def. Br. (Dkt. No. 51) at 15)

As discussed above, courts in this Circuit consider nine factors in analyzing motions to transfer. See Megna, 220 F. Supp. 3d at 498.

As to convenience of the witnesses, location of documents, and availability of process, Haute Living argues that "[a]ll of the witnesses and documents related to Haute Living

14

or Haute Residence's business conduct are located in Miami at the companies' headquarters," and that "the non-party witnesses to this action are in Miami and may not be able to attend trial if the case proceeds in the state of New York. . . ." (Def. Br. (Dkt. No. 51) at 15-16)  Plaintiff, counters that witnesses "are in both New York and Florida," and notes that Haute Living's initial disclosures identified no non-party witnesses.  (Pltf. Opp. Br. (Dkt. No. 54) at 9)

The Court concludes that relevant witnesses and documents are located in both Florida and New York.  Given that Defendant has not identified non-party witnesses who would refuse to attend a trial in New York, the Court further concludes that the availability of process factor is neutral.  In sum, none of these three factors weigh heavily in either direction.

As to convenience of the parties and their relative means, Haute Living argues that it is a "small company and it would be an extreme hardship to be forced to defend itself" in this District.  (Def. Br. (Dkt. No. 51) at 16)  Plaintiff notes, however, that Haute Living has fifteen employees, while he is an individual with few resources.  (Pltf. Opp. Br. (Dkt. No. 54) at 9)  This Court concludes that the convenience of the parties factor is neutral, whereas the relative means factor favors Plaintiff.

As to the locus of operative facts, Haute Living argues that "any conduct alleged by Plaintiff to have occurred in this case was committed by Haute Living or Haute Residence in Miami from where it operates its business. . . ." (Def. Br. (Dkt. No. 51) at 15-16)  This factor thus weighs in favor of transfer.

The comparative familiarity of each district with the governing law does not weigh heavily in either direction, because both districts are familiar with federal copyright claims.

Judicial economy weighs somewhat in favor of retaining this action. While only limited discovery has taken place, this Court has become familiar with the facts of the case in connection with addressing the instant motion to dismiss or transfer.

Plaintiff's choice of forum weighs in favor of retaining this action. See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 101 (2d Cir. 2000) ("a plaintiff's choice of forum is entitled to substantial deference and should only be disturbed if the factors favoring the alternative forum are compelling").

To summarize, the locus of operative facts factor weighs in favor of transfer, while the relative means, judicial economy, and Plaintiff's choice of forum factors weigh in favor of retaining this action. The remaining factors are neutral.

Given these circumstances, the Court concludes that Haute Living has not met its burden to demonstrate, by "clear and convincing evidence," that the balance of factors favors transfer. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010).

Accordingly, Plaintiff's motion to transfer will be denied.

## CONCLUSION

For the reasons stated above, Defendant Haute Living's motion to dismiss or transfer is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 51).

A status conference in this matter will take place on **Thursday, August 27, 2020 at 11:00 a.m.** by telephone. The parties are directed to dial 888-363-4749 to participate, and to enter the access code 6212642. The press and public may obtain access to the telephone conference by dialing the same number and using the same access code. The Court is holding multiple telephone conferences on this date. The parties should call in at the scheduled time and

wait on the line for their case to be called.  At that time, the Court will un-mute the parties' lines.  No later than **August 24, 2020**, the parties must email GardepheNYSDChambers@nysd.uscourts.gov with the phone numbers that the parties will be using to dial into the conference so that the Court knows which numbers to un-mute.  The email should include the case name and case number in the subject line.

        Plaintiff has filed a motion for leave to file a Second Amended Complaint.  (Dkt. No. 31)  Defendant is directed to submit a letter by **August 24, 2020** indicating whether it opposes Plaintiff's application to file a Second Amended Complaint.  The parties are also directed to file a joint letter by **August 24, 2020** with a proposed case management plan.

Dated: New York, New York
      August 11, 2020

SO ORDERED.

*Paul G. Gardephe* (signature)

_____
Paul G. Gardephe
United States District Judge